We'll move to the next case of the day, which is Sims v. Hyatte, Appeal 18-1573. Mr. Barnett. Good morning. Good morning. May it please the Court, my name is Mark Barnett. I'm here for the petitioner-appellant, Max Sims. I'd like to focus my argument under Brady that I think is the main purpose of my briefs, although I'm not conceding the first argument by any means. The Federal District Court denied habeas relief to Mr. Sims, but they indicated they were troubled. They indicated that there was a problem that was so severe, maybe in their minds, that they issued their own certificate of appealability, which doesn't happen that often. And I'm troubled by this. Sixteen years go by, a man sitting in jail, sentenced to 35 years, and this is a clear Brady violation. This isn't maybe. I don't think it's maybe. Agreed. And I think the State agrees with that, too. My concern, Mr. Barnett, is that you seem not to have engaged in your brief with the standard under 2254d-1. You've based your argument heavily upon Circuit precedent, this Court's precedents, when what you have to show is that the State courts were unreasonable in applying, controlling Supreme Court precedent. Well, I can't specifically prove that, but I think it's inherent that if someone's constitutional rights were violated in this manner... You've got a single witness who ID'd the petitioner there as the murderer, and the prosecution concealed inconsistent statements that that witness had given before. And the Supreme Court had no trouble treating that as material under Brady and ordering the conviction vacated. Giglio, similar. Key witness, impeachment information not disclosed. I don't see this argument in your brief. Kyle's against Whitley is the same thing, where you're trying to show why the State courts failed to apply Supreme Court precedent. I have cited Kyle's versus Whitley. I have cited Giglio. I have cited Spinelli. To develop this point on materiality? Yes. Because my position is, under Kyle's, that materiality is automatic if there's a constitutional right violated. In other words, if I'm denied my right to cross-examination based on evidence that the State withheld, and that does not happen in a case, that is a material violation. But counsel, that's not what the Supreme Court's cases hold. No. Exactly. Take a look at cases like Turner and Strickler, where the Supreme Court has found impeachment material was not made available, was relevant, but not sufficiently material to upset the results of the trial. Well, I've cited Kyle's, and the Kyle's test was not necessarily whether or not with or without the evidence a different verdict would result. The test in Kyle's, as far as I could understand, was whether or not there was a fair trial. Fair trial meaning, regardless of what happened or didn't happen, if I'm denied my right to cross-examine a witness, and without absolutely having all the information at hand, that is a violation. It makes no difference to try to figure out what's material and what isn't material, as far as the facts that happened in the case. You can't compartmentalize the case. I think that's what Kyle said. Kyle does say you have to look at all of the Brady material together, but you have to evaluate how critical it was. And I would have thought Smith was one of your best cases. Sorry if I missed that, but I thought I had Brady and its progeny all address this, I believe. Do you know who prepared the petition and the traverse in the district court? I don't. The traverse is actually quite good on this point. I don't, because I only got into this case after the district court denied the habeas. I wasn't involved in any of it. You took a fee for this brief? I did not. Very minimal. I thought it was something that I wanted to do. I took a very, very minimal fee. I just thought that it deserved somebody stepping up and doing something for the defendant. Can you tell us, maybe the State can, do we know anything about witness and victim Carey's race? I do not. I wish I did. I do not. But it seems such a blatant violation to me that I just felt the need to try to represent Mr. Sims. Apparently nothing happened for 16 years. This is the kind of thing that cries out for something. 35 years he was sentenced to. Maybe I didn't cross the I's and dot the T's on the brief as you would have preferred, but I still think the glaring error here is blatant. This is not okay. You can't have the State say, I think it's important to have my witness hypnotized for whatever reason they may have thought. But it's not important for me to tell you that I did that. If you're playing a chess game and you take my rook and you win, you can't say, well, we would have won anyway. I may have played the game differently. I'm a trial lawyer. If I have in my possession that type of cross-examination, here's what I do. First, I make sure I have an expert witness on all the problems inherent in hypnosis testimony. Secondly, I make sure that I subpoena the person that handled the session. In this case, it was not a licensed psychiatrist or psychologist. It was some assistant. And there was no record made. And there was no record made and no videotape made. There are guidelines to be followed in these kinds of cases. Nothing was done. Nothing. This man was sentenced to 35 years in jail because he wasn't given his day in court. He was not. We all know that. He was not. And I think that should be addressed in some manner. I think it's a clear Brady violation. Maybe I missed some cites. Maybe I missed some better cases. But I did cite Kiles. And I did cite Spinelli. And I did cite Giglio. And I did cite Brady. And they all say the same thing. This is not okay. That's all I have to say. It's not okay. You want to save the rest of your time? Yes. Okay. Thank you very much, Ms. Loy, for the state. May it please the court. The state court reasonably applied clearly established federal law when it held that the fact that the victim underwent one session of hypnotherapy prior to trial was not material, requiring reversal under Brady. First of all, Mr. Smith. You don't think that hypnotizing a prosecuting witness and not telling the defendant was material? I think it should have been disclosed, Your Honor, but no. It was not material under the circumstances in this case. Well, explain to me what circumstances makes it material. Because the victim had identified Mr. Sims at least three times in photo lineups before the hypnotherapy session. Moreover, he gave an accurate description of sites. Then why have him hypnotized if you've got sufficient? It's my understanding, based on Mr. Carey's post-conviction testimony, that he himself wanted to be more certain that he had chosen. So he set up the idea of the hypnosis witness? I believe he talked with that idea, about that idea. I wonder who raised the issue. Did the prosecution raise the issue or did the witness raise the issue? And how does he raise it? I'm not so sure. I believe Mr. Carey's testimony was that the prosecutor raised the issue. Why would he raise the issue if he had sufficient to support the testimony? If he knew that the witness would testify as he did? I don't know the answer to that, Your Honor. Well, wouldn't it be interesting to know what the answer was? And not only interesting, but constitutionally appropriate. If the witness says, I'm not sure I ought to be hypnotized, maybe I can remember then. Or the prosecutor says, you sound kind of limp to me as a witness. How would you like to undergo hypnosis and see if you can refresh your recollection better? I don't think there was any intent to refresh his recollection better as to the identification of Mr. Sims. I beg your pardon? I'm sorry? I beg your pardon? No intent to strengthen his testimony? His identification of Mr. Sims. What else was he testifying about? And if I may follow up on Judge Bowers. Yes, Your Honor. My concern with the state court opinion in this case is that it gave no account of the difference between that looks like the guy and the trial testimony after the witness said he wanted to be more certain, the prosecutor wanted him to be more certain, and he goes in and says that's the guy. The difference in levels of certainty is critical in Supreme Court jurisprudence on eyewitness identification. And in this case, there were three prior photo identifications. Looks like the guy. I've got glass in my eye, I'm groggy, and I'm in pain. Correct. It was the day after he had. Sorry. He started out with a single picture. No, Your Honor. The first photo identification were of multiple single Polaroid pictures. The first one was not a single photo? No, it was in the emergency room, and the officer, Fay, testified that he retrieved from his office six or seven Polaroid photographs and handed the cluster to Mr. Carey when he was in the emergency room. So he looked at the same Polaroid photographs that were then displayed in an array in the second photo identification, which was the day after Mr. Carey underwent surgery for his fractured jaw and had glass removed out of his eye. And he himself testified that during that second lineup, he was groggy from having the surgery and the medication. So in the second photo lineup, he looked at the same group of photographs that were presented more in an array instead of in a bunch that he had been given during the first. So the prosecutor was not afraid that the defendant might change his mind or might say he didn't know? There's no testimony, no. No, I know, but you would surmise from this that the prosecutor had absolutely reliable testimony? The prosecutor said he would not have prosecuted had Mr. Carey been equivocal on his identification of Mr. Says. You know, that's what he says now. I said I was a prosecutor often on both in the federal and the state for several years. Yes, Your Honor. And that's one that I can't even understand why you put him under way of notices if you didn't have a doubt that he would testify straight. It was my understanding that it was a topic that was broached by the prosecutor. We have different understandings of how these things work, apparently. I'm sorry, Your Honor? I said we have different understandings of how these things work. Why put him under hypnosis if you didn't doubt it yourself? I don't have an answer to that, Your Honor. I'll bet you don't. It's not in the record. Only that Mr. Carey wanted to undergo hypnosis. He wanted to go back to and replay the events of the crime in his mind again. And, in fact, Mr. Sims does not even contend that Mr. Carey's testimony regarding the entire crime. I'm not hollering at you, you understand. You were not the prosecutor. You didn't make the decision. You didn't make the decision. The decision to put him under hypnosis was perfectly all right as far as I could tell, except that you didn't bother telling the defense lawyer that he had testified under hypnosis. Correct, Your Honor. He did not. But still, the Indiana Supreme Court of Appeals had to address the materiality of this under the circumstances in this case. Well, here's our chance. Go ahead. Mr. Carey was thoroughly cross-examined at the trial regarding any inconsistencies in his testimony and in his prior, sorry, what the police. But the jury didn't know he was hypnotized to get this brilliant information out. Correct. The jury did not have that information. And had no opportunity, for example, to learn about how hypnosis can wind up reinforcing errors as well as correct information or can lead to so-called confabulation. Your Honor, even on post-conviction review, Mr. Sims did not establish the effects of hypnotherapy generally on a subject undergoing hypnotherapy or specifically to Mr. Carey. There was no expert testimony in this case. He was on his own, correct? No, I'm sorry. No, he had. Once this was disclosed, the trial court appointed Mr. Sims' counsel. State Defender's Office? I believe so, Your Honor. Okay. In your experience, Ms. Loy, have you come across a more calculated or deliberate violation of Brady than this? Your Honor, I had not given that any thought before I came here today. My recollection of the ex-prosecutor's testimony at post-conviction is that he didn't consider it to be exculpatory because Mr. Carey had given three identifications of Mr. Sims. What do you think of that reasoning? Your Honor, it's not relevant what I think of that particular decision. Okay. But in this case, I do believe that there is sufficient independent information in corroboration of Mr. Carey's identification of Mr. Sims. What's the corroboration? Just his presence nearby? His presence nearby. He was crouching down behind a dumpster and some bushes, and he was in clothing. Sorry, his general description matched Mr. Carey's description, and the clothing that Mr. Sims was apprehended in, especially specifically the three-quarter length black or dark-colored jacket that Mr. Sims was apprehended in. Could you address, first of all, for habeas relief in this case, do you think we need to have a hypnosis case from the Supreme Court? That would only be relevant to whether it was contrary to clearly established federal law, Your Honor. That's the question. That's my question. Do you think Mr. Sims needs to show a Supreme Court case involving failure to disclose hypnosis? Does it have to be that specific? I think yes, Your Honor. Really? Especially under these circumstances, when there are facts that do support the Indiana Court of Appeals decision. So take a look. Could you address, for example, Smith v. Cain or Kyles v. Giglio, which deal with failure to disclose significant impeachment material about the pivotal prosecution witness? Your example regarding Smith v. Cain, regarding prior inconsistent statements, I think is completely different than what occurred here. There were no prior inconsistent statements, and, in fact, the testimony- You don't see a difference between, I think that's the guy, and I'm certain that's the guy. I think there is a minimal difference, and I think that was thoroughly explored at trial as to why he said, I think that's the guy. And the answer had nothing to do with hypnosis. No, Your Honor. Because nobody mentioned it, right? Because he made that identification prior to hypnosis, and he explained what he meant when he said, I think that's the guy, and specifically what thought process he underwent when he- I'm sorry, Your Honor, may I finish my answer? Finish the thought. When he compared the picture of Mr. Sims with the other photographs, which were similar in the photo array. And also, Your Honor, that he was under the effects of having surgery on his jaw and his eye the previous day. Thank you. Thank you, Your Honor. Let's see, Mr. Barnett, you had a couple of minutes for rebuttal. You got two minutes. You got two minutes. You don't have to use them all. I'm not going to. I think it's been well covered. I think it's been well covered, honestly. You want to talk me out of it? Go ahead. No, I don't. I think I'll- Thank you very much. Thanks to both counsel. The case is taken under advisement.